ABLE ELECTRIC CO., APPELLEE, v. VACANTI & RANDAZZO CONSTRUCTION COMPANY, APPELLANT.

324 N.W.2d 667

Filed October 1, 1982. No. 44402.

Frank Meares, for appellant.

Michael J. Mooney and Michael W. Pirtle of Mc-Cormack, Cooney, Mooney & Hillman, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

This appeal arises out of a suit filed by the appellee, Able Electric Co., an electrical subcontractor, against the appellant, Vacanti & Randazzo Construction Company, a general contractor. Following trial, a judgment in favor of Able and against Vacanti in the amount of $15,156.40 was returned by a jury. Vacanti has appealed to this court, essentially maintaining that the trial court committed error by reason of certain of the instructions given by the court to the jury. We have examined the record and conclude that the claims of appellant are without merit and that the judgment should be affirmed.

Vacanti, as general contractor, entered into a contract for the construction of a building in Council Bluffs, Iowa. The general contract between the owner and Vacanti contained a clause requiring the project to be completed within 450 days from the issuance of a notice to proceed. Thereafter, Vacanti entered into a subcontract with Able. Able was to perform the electrical work for the project. Able agreed to perform all the work for a price ''not to

exceed" $120,000. The subcontract entered into between Vacanti and Able provided in part that Able would "complete all work under the job schedule time period set up by the General Contractor and Owner." Able also agreed to "assume toward the Contractor all the obligations and responsibilities that the Contractor assumes in and by the aforesaid documents toward the Owner, in so far as they are applicable to this particular sub-contract."

The project manual which included the job specifications and was made available to all the contractors and subcontractors in determining their bids further provided in part: "6. To complete the work within 450 calendar days of the notice to proceed." The notice to proceed was issued on November 28, 1977.

The job was admittedly late in starting and by the spring of 1979 was far behind schedule. Able became concerned about this matter and contacted Vacanti. Able's president testified that it relied upon the 450-day completion period contained in the project manual in calculating labor costs, due to the fact that its employees' union contract would expire in June of 1979, thereby affecting Able's cost of labor after June 1979. Able went to Vacanti and requested additional compensation to defray the increased costs. Based upon an expected completion date of mid-August 1979, Able offered to finish the job for an additional $10,500. Vacanti refused the offer. When it became apparent to Able that the project could not possibly be completed before its labor contract expired, Able left the job. The entire project was eventually completed in February or March of 1980, more than 1 year beyond the specified completion date as contained in the contract and the project manual.

As of April 30, 1979, Able had been paid a total of $82,800 for labor and materials valued at $92,000. The difference of $9,200 was withheld by Vacanti un-

der a provision of the subcontract which entitled Vacanti to withhold 10 percent of the amount due to a subcontractor until completion of the project. In addition, Able did not receive payment for labor and materials furnished during May and June of 1979 in the amount of $5,956.40, although payment had been made by the owner to Vacanti.

Vacanti maintains that the verdict of the jury must be set aside because of improper instructions given by the trial court. Vacanti maintains that the trial court erred in giving instruction Nos. 3, 4, and 5, as they "placed undue emphasis upon the claims of the Plaintiff unsupported by the evidence which failed to state a cause of action." We may dispose of that matter quickly. Instruction Nos. 3, 4, and 5 were merely an outline of Vacanti's answer and cross-petition and Able's reply. Instruction No. 5 specifically advised the jury that "The foregoing outline of the contents of the pleadings of the parties are merely their statements and contentions made in this lawsuit; and, except as to any admissions contained therein, are not to be considered by the jury as evidence in the case." Instruction Nos. 3, 4, and 5 merely advised the jury what the appellant's issues were and were entirely proper. *Watson Bros. Transp. Co. v. Jacobson,* 168 Neb. 862, 97 N.W.2d 521 (1959). We are unable to determine how or in what manner Vacanti can find fault with those instructions.

Vacanti's second claimed assignment of error involves whether there was a requirement imposed on Vacanti to complete the contract within 450 days and whether that made time of the essence of the contract. Vacanti maintains that the issue as to whether 450 days was of the essence was a question of law and not a question of fact and, therefore, the trial court was in error in submitting instruction Nos. 7 and 12 to the jury. Again, we believe that Vacanti is in error in this assertion. The question of whether

the interpretation of a contract is a matter of law or a question of fact depends upon certain factors. If the contract is to be construed by reference to its terms alone and without reference to extrinsic circumstances, it is for the court alone to interpret. See, *Oehlrich v. Gateway Realty of Columbus, Inc.,* 209 Neb. 417, 308 N.W.2d 327 (1981); *Westbrook v. Masonic Manor,* 185 Neb. 660, 178 N.W.2d 280 (1970). On the other hand, if the interpretation depends upon extrinsic facts which are in dispute, the resolution of those facts must be submitted to the jury. *Gustav Thieszen Irr. Co., Inc. v. Meinberg,* 202 Neb. 666, 276 N.W.2d 664 (1979); *Ely Constr. Co. v. S & S Corp.,* 184 Neb. 59, 165 N.W.2d 562 (1969). The law in Nebraska as to whether time is of the essence in a contract has long been as expressed in the case of *J. H. Melville Lumber Co. v. Welpton Lumber Co.,* 121 Neb. 370, 371-72, 236 N.W. 438, 439 (1931), wherein we said: "Time is not generally considered as the essence of a contract, unless it is expressly provided or it appears that it was the intention of the parties that it should be of the essence thereof." In the instant case the general contract and the invitations to bid specifically obligated both the contractor and the subcontractor to complete the work within 450 days. The subcontractor was to submit his bid based upon the assumption that the work would be completed within 450 days. The contract documents are not clear as to whether the 450 days was an essential requirement of the contract or merely an unimportant detail. If we believed Vacanti and its witnesses, we would conclude that the parties did not intend that the 450-day time limit be considered as the essence of the contract, even though the contract documents contained provisions which could be understood to make it so. On the other hand, if we believed Able and its witnesses, we must find that time was of the essence. The answer to that question depends upon determining what was the intention of

the parties. To arrive at that determination, resort to extrinsic evidence was required; therefore, the trial court was correct in concluding that the question involved was a question of fact to be submitted to the jury. Instruction Nos. 7 and 12 were in all respects correct and were properly submitted to the jury.

The last assignment of error raised by Vacanti is with regard to instruction No. 11. Instruction No. 11 instructed the jury that the obligation of scheduling and coordinating a construction project is imposed upon the general contractor and that failure of the party charged with scheduling responsibility to properly carry out this function *may* be a substantial breach of its obligation to the other party, thereby entitling the other party to abandon the project and seek damages.

Under the terms of article 4.3.1 of the general conditions of the contract, Vacanti was obligated to schedule and coordinate the work. The provisions provided in part as follows: "He [the contractor] shall be *solely* responsible for . . . coordinating all portions of the Work under the Contract." (Emphasis supplied.) The subcontract between Able and Vacanti obligated Able to "complete all work under the job schedule time period set up by the General Contractor and Owner." Reading these documents together, see, 17A C.J.S. *Contracts* § 299 (1963) and *W. Wright, Inc. v. Korshoj Corp.,* 197 Neb. 692, 250 N.W.2d 894 (1977), Vacanti was solely responsible for coordinating the time schedules established for the project, and his failure to do so could be considered a sufficient breach so as to entitle the subcontractor to sue to recover damages. *W. Wright, Inc. v. Korshoj Corp., supra; Siefford v. Housing Authority,* 192 Neb. 643, 223 N.W.2d 816 (1974); *Parsons Constr. Co. v. State,* 180 Neb. 839, 146 N.W.2d 211 (1966); 13 Am. Jur. 2d *Building, Etc. Contracts* § 45 (1964).

The instruction was correct, although more favor-

able to Vacanti than he might have been entitled. The trial court did not tell the jury that Vacanti had in fact contracted to coordinate the work, but only that there was an implied obligation to do so. Such action by the trial court does not entitle Vacanti to any relief on appeal. *Kennedy v. Woods,* 131 Neb. 217, 267 N.W. 390 (1936); *Sandberg v. Hoogensen,* 201 Neb. 190, 266 N.W.2d 745 (1978).

The instructions as tendered by the trial court to the jury were in all respects correct and the judgment returned by the jury fully supported by the record. We have likewise reviewed the other assignments of error raised by Vacanti and find them to be without merit. The judgment therefore must be affirmed.

AFFIRMED.

CLINTON, J., participating on briefs, concurs in the result.